STATE, Respondent, vs. WHALEN and others, Appellants.

*May 12—December 4, 1928.*

296

For the appellants there were briefs by *John J. Boyle* of Darlington and *Fiedler & Garrigan* of Beloit, and oral argument by *Mr. Boyle* and *Mr. E. C. Fiedler.*

For the respondent there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Paul B. Conley,* district attorney of Lafayette county, and oral argument by *Mr. Conley* and *Mr. Messerschmidt.*

STEVENS, J. (1) The case presented an issue of fact for the jury upon proof that satisfies the conscience of the court that these defendants were guilty of burglary as found by the jury.

On the night in question a chicken house was broken open and chickens stolen therefrom. The proof tends to establish the fact that at eleven o'clock on that night a much-used Dodge car owned by the defendant Rowe was stalled upon the highway leading to the farm where the burglary was

committed and that defendants were then having tire trouble; that at about four o'clock the next morning the defendants were still upon this same road and were still having tire trouble at a place further removed from the scene of the burglary, and that at that time defendant Whalen was recognized as one of the three men about the car.' There is no dispute that at six o'clock the following morning the car was at a house about twelve miles distant from the place of the crime and that at that time both rear tires were out of commission so that the car could not proceed further without tire repairs.

The witness who testified that she recognized defendant Whalen beside the stalled car in the early morning hours saw a chicken crate with chickens in it in the rear of the car as she passed it. A chicken crate and a few live chickens were found at abandoned farm buildings located on the road between the place of burglary and the place where the defendants gave up the struggle with the old tires at six o'clock in the morning. Dead chickens were found under a brush pile near this place where the car was left at six o'clock in the morning.

The next evening after the burglary the defendants refused to stop their car at the command of an officer, even after he had fired a shot at them. When the officers found the defendants in the early morning hours of a subsequent day at a home across the state line in the state of Illinois, to which they had gone after the burglary, the defendant Rice jumped out of an attic window eighteen feet above the ground in order to escape arrest. When the car was found after it had been abandoned by the defendants on the next night after the burglary, chicken blood and chicken feathers were found in the rear of the car.

The jury were justified in refusing to believe the story told by the defendants that they were in Janesville, more than sixty miles from the place where the chickens were stolen,

until three o'clock on the morning of the burglary, because the proof is undisputed that the roads were so icy as to render driving difficult and the defendants were having tire trouble during the night which became so serious that they had to abandon the car at six o'clock on the following morning.

The fact that the witness who testified that she identified defendant Whalen as one of the men who were about the stalled car in the early morning hours had only a speaking acquaintance with him and had seen him but a few times before that night, presented a jury question as to the weight to be given to her testimony. A reading of her testimony and of the affidavits relating to her testimony made by her, her father, and others after the trial satisfies the court that the jury were warranted in believing that defendant Whalen was standing by this stalled car in the early morning hours.

The case presents so strong a chain of circumstantial evidence leading to the conclusion that the defendants were guilty of the offense charged that the judgment must be affirmed, unless prejudicial error was committed in the trial of the case.

(2) The court took unusual care in instructing the jury fully upon the rule as to reasonable doubt in criminal cases. Practically one half of all instructions given related directly or indirectly to that subject. These instructions fully and correctly stated the rules as to reasonable doubt. The instructions that were written out and sent to the jury room contained the statement: "If after a careful and thorough review of the evidence, there arises in your mind a doubt for which a good reason arising from the evidence can be given, it is your duty to give the defendants the amplest and fullest benefit of this *against* them." In the oral instructions given the jury the words "and acquit" were used in place of the word "against" in the portion of the written instruction which is quoted above. We cannot believe that this palpable mistake in transcribing the instructions that were sent to the

jury room could have prejudiced the rights of the defendants, because these written instructions repeated again and again the rule that the jury must acquit these defendants unless their guilt has been established by the evidence beyond all reasonable doubt.

(3) This is a case in which the court might properly have submitted the issue of the guilt or innocence of each of these three defendants by separate forms of verdict. But the court committed no prejudicial error in submitting only two forms of verdict by which the jury found all three defendants either innocent or guilty. It is clear under the testimony of the three defendants themselves that they passed the entire night of the burglary together. If the burglary was committed by them, each is guilty of the offense charged.

(4) The defendants attempted to account for the presence of chicken feathers and chicken blood in the rear of defendant Rowe's automobile by calling a witness who testified that on the day of the burglary he had bought some chickens and thrown them into the rear of defendant Rowe's automobile as soon as they were killed. On cross-examination the district attorney was permitted to examine him as to his verification on a bail bond which he signed for his son-in-law, the defendant Rice, in which he swore that he was worth $4,000 in property exempt from execution. It appeared that his property consisted of a house and lot which was occupied by his daughter and defendant Rice, in which he had two rooms to which he returned at times, but was not there often. The district attorney sought to impeach his credibility as a witness by showing that his justification on the bail bond was false because, as the district attorney contended, this property was exempt from execution as the homestead of the witness.

Even if it be conceded that the trial court was in error in permitting this cross-examination, the court is satisfied, and we believe that the jurors must have been satisfied, from the testimony of this witness that he honestly believed that he

owned property not exempt from execution of the value stated in the justification at the time he signed the bond. If so, the attempt to impeach his testimony failed. But even if it be assumed that because of this cross-examination the jury did not believe the testimony of this witness, that would not lead to a reversal, because his testimony related to but one link in the chain of circumstantial evidence, that of the presence of the chicken feathers and chicken blood in the defendant's car. There still remains the proof which warranted a finding that the defendants were in the neighborhood of the place of the burglary on the night in question with chickens in their car, together with the proof of their subsequent conduct, all of which is sufficient to sustain the finding of the jury.

The court is satisfied that there was no error committed on the trial which prejudiced the substantial rights of the defendants, and that the verdict is not only supported by the evidence, but that the proof is sufficient to satisfy the court that the defendants were guilty of the offense with which they were charged.

*By the Court.*—Judgment affirmed.